**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BIRJETTE WHICKER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Civil Action No. 25-15253 (SDW)<br><br>**OPINION**<br><br>September 8, 2026 |

**WIGENTON**, District Judge.

Before this Court is Defendant Samsung Electronics America, Inc.'s ("Defendant" or "Samsung") Motion to Dismiss (D.E. 28 ("Mot.")) Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons stated herein, the Motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiffs Birjette Whicker, Romondo Jessup, Richard Hilburn, Keely Boone, and Kelly Dean (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, bring this

[1] Citations to "D.E." refer to docket entries in the Court's Electronic Case Filing System for this matter and any internal citations contained therein, unless otherwise indicated.

putative class action over Samsung's defective ice trays. Defendant moves to dismiss. This Court examines whether Plaintiffs' claims meet the Rule 12(b)(6) standard.

Defendant Samsung designs, manufactures, and sells consumer appliances throughout the United States. (D.E. 16 ("AC") ¶ 10.) At issue in this case are certain French Door refrigerator models which feature an automatic ice maker tray that makes four kinds of ice.[2] (*Id.* ¶¶ 1–5, 11, 39.) Plaintiffs purchased Defendant's refrigerators between December 30, 2021 through October 3, 2023.[3] (*Id.* ¶¶ 1–5.) Plaintiffs allege that the refrigerators suffered from a defect at the time of purchase and that if they had known of this, they would not have purchased the product. (AC ¶¶ 14, 33.)

Ideally, each refrigerator's ice maker fills an ice cube tray with water and inverts the tray once the water is frozen. (*Id.* ¶ 11.) Then, the tray is twisted to loosen the ice, permitting the ice to fall into a container from which it can be dispensed. (*Id.*) However, according to Plaintiffs, the ice makers in these specific refrigerators are defective because the tray "is made of a brittle plastic that cracks when it is twisted and deformed," which then allows water to "drip through the tray and into the container" ("the Defect"). (*Id.*)

Each named Plaintiffs' refrigerator contained the Defect. (*Id.* ¶¶ 85, 88, 91, 94, 97.) Some Plaintiffs contacted Samsung for repairs only to discover the issue was not covered because the claim fell outside the product's one-year Limited Warranty.[4] (*Id.* ¶¶ 85, 91.) Plaintiff Boone

---

[2] The specific models at issue are RF32CG5400SR, RS27T5200SR, and the ranges for model numbers RF32CG******, RF27CG******, and RS27T5200*, as well as "all other [r]efrigerators designed, manufactured, and sold by Defendant with the same or similar [d]efect." (AC ¶ 13.)

[3] The respective dates of purchase were: December 30, 2021 (Boone); June 10, 2022 (Hilburn); November 10, 2022 (Dean); March 8, 2023 (Jessup); and October 3, 2023 (Whicker). (AC ¶¶ 1–5.)

[4] The refrigerators come with a one-year express warranty "for defects in materials or workmanship under normal home use" (hereinafter, "the Limited Warranty"). (AC ¶ 40.)

contacted Samsung and received a replacement ice maker assembly under warranty. (*Id.* ¶ 94.) Plaintiffs Jessup and Dean did not contact Samsung. Jessup alleges she was dissuaded from doing so because she would have needed to replace the entire ice maker assembly as opposed to simply being able to replace the ice tray. (*Id.* ¶¶ 19, 88.)

Plaintiffs seek to hold Defendant liable for the Defect, which they claim is inherent in the refrigerators. (AC ¶ 14.) Plaintiffs submit "[t]he Defect is caused by Defendant's selection of materials and design parameters that are insufficient to withstand the mechanical, thermal, and torsional stresses imposed during ordinary household use over" the refrigerators' expected life. (*Id.* ¶ 18.) They claim pre-release testing data, post-release reliability data, warranty claims, repair records, and consumer complaints about the Defect put Defendant on notice and created a duty to disclose since Defendant possessed "exclusive and superior knowledge" of the Defect. (*Id.* ¶¶ 20–21, 24–27, 49–57, 63–64.) Plaintiffs assert that "Defendant engaged in a pattern of concealment by denying that the Defect was widespread, shifting blame to consumers, and providing ineffective or temporary repairs." (*Id.* ¶ 67.) Plaintiffs maintain they and their fellow class members reasonably relied on Defendant's representations and that but for Defendant's material omissions, they would have "either paid substantially less for the Refrigerators or would not have bought them at all." (*Id.* ¶¶ 70–72.)

**B. Procedural History**

Plaintiffs initiated this class action lawsuit on September 4, 2025.[5] (D.E. 1.) Plaintiffs amended their complaint a few months later. (D.E. 16.) The Amended Complaint is the operative pleading and asserts the following causes of action: breach of express warranty, contra the

---

[5] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), and Federal Rule of Civil Procedure 23, Plaintiffs define the class as "[a]ll persons in the United States who purchased the Refrigerators." (AC ¶ 100.) The Amended Complaint also contains subclasses for Arizona, California, North Carolina, and Oregon; each class is comprised of all purchasers of the refrigerators in the corresponding state. (*Id.*)

Uniform Commercial Code ("U.C.C.") § 2-313 (Count I); breach of implied warranty pursuant to U.C.C. § 2-314 (Count II); fraud by omission (Count III); unjust enrichment (Count IV); violation of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. Ann. §§ 44-1522 *et seq.* (Count V); violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count VI); violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (Count VII); violation of the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA"), N.C. Gen. Stat. §§ 75-1.1 *et seq.* (Count VIII); and lastly, violation of the Oregon Unlawful Trade Practices Act ("Oregon UTPA"), Or. Rev. Stat. § 646.605 *et seq.* (Count IX). (AC at 24–41.)

Defendant moved to dismiss the Amended Complaint shortly after Plaintiffs filed it. (D.E. 28.) The parties timely completed briefing. (D.E. 28, 37, 41.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The analysis involves a two-step approach. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). First, the court parses between the factual and legal elements of a claim, treating "all of the complaint's well-pleaded facts as true," but disregarding any legal conclusions. *Id.*; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Second, the court considers "whether the facts alleged in the complaint are sufficient to show that the

plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

When a plaintiff pleads factual content that enables the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged," a claim has facial plausibility. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.* The court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Belichick*, 605 F.3d at 230 (citation omitted).

**B. Rule 9(b)**

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading requirement concerning allegations of fraud. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[T]he law does not require specificity just for specificity's sake"; rather, "[t]he level of particularity required is sufficient details to put [d]efendants on notice of the 'precise misconduct with which they are charged.'" *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 104 (D.N.J. 2011) (quoting *Franulovic v. Coca Cola Co.*, No. 07-539, 2007 WL 3166953, at *11 (D.N.J. Oct. 25, 2007)). At a minimum, a plaintiff must support allegations of fraud "with all of the essential factual background that would accompany

the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)).

## III. DISCUSSION

### A. Breach of Express Warranty (Count I)

#### i. Type of Defect Alleged

Plaintiffs' breach of express warranty claims are premised on the Limited Warranty, in which Defendant warrants "against manufacturing defects in materials or workmanship" for a one-year period. (AC ¶ 40.) The parties dispute the kind of defect alleged and whether Plaintiffs' claims fall within the scope of Samsung's Limited Warranty. Defendant submits Plaintiffs plead a design defect, which is not encompassed by the Limited Warranty. (D.E. 28-1 ("Mov. Br.") at 22–24.) Plaintiffs argue that Defendants mischaracterize the Defect as a design defect and maintain that they have adequately pleaded claims for breach of express warranty because they "expressly allege the Defect was caused by the materials Samsung used for the ice makers." (D.E. 37 ("Opp'n Br.") at 16–17.)

In *Coba v. Ford Motor Co.*, the Third Circuit considered whether a warranty for "materials or workmanship" covered "design" defects under New Jersey law.[6] 932 F.3d 114, 121 (3d Cir. 2019). After examining the plain language meaning of the terms "workmanship," "materials," and "design," the court concluded that "in the context of product development, defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a

[6] Neither party raised a choice of law issue, instead presuming the applicability of New Jersey law. Even if a choice of law issue was properly before this Court, given the conclusion that Plaintiffs fail to plead a breach of express warranty claim because they allege a design defect, *see infra*, this Court would still forego a choice of law analysis. *See Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *4 (D.N.J. Dec. 5, 2019).

product, while defects in 'design' are shortcomings that arise in the plans for a product's creation." *Id.* Thus, the court held that "a warranty that limits its coverage to defects in 'materials' and 'workmanship' does not, without more, apply to defects in 'design.'" *Id.* at 123. In considering whether the plaintiff's amended complaint pleaded a manufacturing or design defect, the court focused on the fact that the alleged defect related to the overall construction and operation of the fuel tanks—namely, Ford's plan to use A35 and A36 coatings in constructing its fuel tanks—as opposed to whether the coatings were of a low quality or if there was a problem in the process of applying them to Ford's fuel tanks. *Id.* at 123–24. Thus, the court concluded that the plaintiff alleged a design defect, which fell outside Ford's limited warranty. *Id.* at 124.

At bottom, the allegations in the Amended Complaint allege a design defect in Defendant's French Door refrigerators because Plaintiffs take issue with Samsung's decision to utilize plastic for the automatic ice maker tray—a shortcoming that "arise[s] in the plans for [the] product's creation." *Id.* at 121; *see* AC ¶ 17 ("The Refrigerators suffer from a uniform *design defect* whereby the automatic ice maker tray is made of brittle plastic that cracks under normal, foreseeable use.") and ¶ 68 (alleging "replacement assemblies contained the same defective tray *design*") (emphases added). Indeed, Plaintiffs' Amended Complaint is devoid of allegations claiming the refrigerators were improperly assembled or were not built in accordance with Samsung's intended specifications. Given that Plaintiffs allege "a flaw in the overall intended construction," as opposed to a problem in the building or assembly process, Plaintiffs' claims can only be construed as a design defect. *See Amato*, 2019 WL 6607148, at *5–6 (determining the plaintiffs alleged a design defect where they alleged Subaru's performance modifications resulted in the use of more brittle cast pistons and a less expensive manufacturing process). Thus, Plaintiffs' claims fall outside the scope of the Limited Warranty.

**ii. Defects Arising After the 1-Year Limited Warranty Period**

Defendant also contends that Plaintiffs' failure to contact Samsung as required by the terms of the warranty, specifically the one-year window, is detrimental to their claims. (Mov. Br. at 24.) Relying on *Kuzian v. Electrolux Home Products, Inc.*, 937 F. Supp. 2d 599 (D.N.J. 2013), Plaintiffs submit the Amended Complaint plausibly establishes that the Defect manifested within the one-year coverage period guaranteed by the Limited Warranty. (Opp'n Br. at 18–19.)

Generally, "latent defects discovered after the term of [a] warranty are not actionable." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519 (D.N.J. 2008) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995)). Plaintiffs' reliance on *Kuzian* is misplaced, as the plaintiffs in that case not only claimed their products suffered from a defect, but also sought repairs within the one-year express warranty. 937 F. Supp. 2d at 605. Here, Plaintiffs Whicker, Boone, and Hilburn do not plausibly allege that they discovered the Defect within the one-year Limited Warranty period, as they purchased their refrigerators on October 3, 2023; June 10, 2022; and December 30, 2021 and discovered the Defect in October 2024; June 2023; and July 2023, respectively. (AC ¶¶ 84–85, 88, 90–91, 93–94, 97.)

Plaintiffs Jessup and Dean purchased their refrigerators on March 8, 2023 and November 10, 2022, and allege they discovered the Defect in October 2023. (AC ¶¶ 87–88, 96–97.) Their claims still fail to plausibly allege a breach of the Limited Warranty, however, as Plaintiffs Jessup and Dean do not allege they notified Samsung, let alone that they attempted to avail themselves of the Limited Warranty's service provision permitting Samsung to repair, replace, or refund Plaintiffs the original purchase price. Plaintiffs Jessup and Dean ask this Court to impose liability solely because their refrigerators experienced the Defect, yet "an express warranty with a limited time period does not mean that a seller is promising a defect-free product." *Kuzian*, 937 F. Supp.

2d at 611. Plaintiffs Jessup and Dean establish that their refrigerators were under warranty, but they do not go as far as to establish that they availed themselves of it. *See Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 592–93 (D.N.J. 2016) (rejecting the contention that the defendant breached the warranty because its HVAC units malfunctioned while under the warranty coverage period absent allegations indicating the plaintiffs continued to experience problems even after repairs were made).

In sum, Plaintiffs' breach of express warranty claims fall outside the scope of the Limited Warranty. Count I is thereby dismissed.

**B. Breach of Implied Warranty (Count II)**

Plaintiffs contend Defendant has breached the implied warranty of merchantability as the refrigerators are not merchantable since they cannot produce and dispense ice. (Opp'n Br. at 19–20.) Defendant argues Plaintiffs' failure to allege that their refrigerators are unfit for their ordinary purpose of chilling food, and their lack of privity to Defendant, is detrimental to their implied warranty claim. (Mov. Br. at 26–28.) As to privity, which is required under Arizona, California, and North Carolina law, Defendant points out Plaintiffs purchased their refrigerators from retailers, as opposed to directly from Defendant, the manufacturer. (*Id.* at 28.)

This Court solely addresses the privity argument. Plaintiffs assert breach of implied warranty claims under their respective state of citizenship's statutes, each of which have a privity requirement.[7] *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 796 (E.D.N.C. 2009) ("Under

---

[7] New Jersey, on the other hand, does not require privity to assert a breach of implied warranty claim. *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 489 A.2d 660, 674 (N.J. 1985) ("[T]he absence of privity between a remote supplier and an ultimate purchaser should not preclude the extension to the purchaser of the supplier's warranties made to the manufacturer."). Thus, a conflict of law exists. Courts in this circuit faced with the same legal issue have concluded the plaintiff's respective state law should apply when the plaintiff purchased and utilized the product in question in the state they are domiciled in. *See, e.g.*, *Avram v. Samsung Elecs. Am., Inc.*, No. 11-6973, 2013 WL 3654090, at *10–11 (D.N.J. July 11, 2013) (finding a conflict of law existed between New Jersey and Arizona on the issue of whether privity is required for a

North Carolina common law, privity of contract is generally required to assert an implied warranty claim."); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 806 (C.D. Cal. 2022) ("Arizona courts have consistently held that absent privity of contract, a purchaser cannot maintain a claim for breach of implied warranty under the U.C.C. against a manufacturer." (quoting *Plagens v. Nat'l RV Holdings*, 328 F. Supp. 2d 1068, 1073 (D. Ariz. 2004))); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("Under California Commercial Code section 2314 . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."); *Davis v. Homasote Co.*, 574 P.2d 1116, 1117 (Or. 1978) ("This court has adhered to the rule that privity of contract is essential before a purchaser can recover economic loss from a manufacturer for breach of implied warranty."). Plaintiffs do not plead facts establishing the privity requirement, or an exception thereto, and thus, their breach of implied warranty claims fail.[8] *See Clemens*, 534 F.3d at 1023 ("A buyer and seller stand in privity

---

breach of implied warranty claim and concluding Arizona applied since the plaintiff "shopped for, purchased, installed and used the refrigerator in Arizona, where she lives," which meant the first four factors of the "most significant relationship" test favored Arizona). This Court concludes the same.

Notably, Plaintiffs attempt to amend their breach of implied warranty claim through their Opposition Brief to proceed under California's Song-Beverly Act, which does not have a vertical privity requirement. *Compare* (AC ¶ 122 & n.11 (invoking U.C.C. § 2-314, as codified by California Commercial Code § 2314)), *with* (Opp'n Br. at 22 (arguing pursuant to California's Song-Beverly Act)). *See Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 455 (D.N.J. 2012) (acknowledging that "[o]ne essential difference between California's Commercial Code and its Song-Beverly Act is that the former requires privity whereas the latter does not" and concluding there is no conflict of law between New Jersey's law of merchantability and the Song-Beverly Act). This Court declines to consider Plaintiffs' Song-Beverly argument, as "[i]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[8] Relying on *Kinlaw v. Long Manufacturing North Carolina*, Plaintiffs argue their allegations that Samsung marketed its refrigerators sufficiently meet North Carolina's exception to its general privity requirement recognizing that "a manufacturer can extend a warranty beyond the bounds of privity if he makes representations designed to induce a purchase and directed to the ultimate purchaser." (Opp'n Br. at 22 (quoting 259 S.E.2d 552, 556 (N.C. 1979).) *Kinlaw* is distinguishable, however, as it dealt with the issue of whether the absence of contractual privity between a manufacturer and a purchaser barred the purchaser's claim for breach of a tractor's *express* warranty. *See id.* at 553, 557 ("Plaintiff has alleged an express

if they are in adjoining links of the distribution chains. Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." (citation omitted)). Count II is dismissed.

**C. Fraud Claims**[9]

**i. Fraud by Omission (Count III)**

Plaintiffs assert fraud by omission claims premised on Defendant's failure to disclose the Defect. (Opp'n Br. at 27–32; AC ¶ 73.) Plaintiffs note Defendant conducts pre-sale testing—including "mechanical stress testing, torsion testing, vibration testing, thermal cycling, pressure testing, shock testing, and reliability-growth testing designed to simulate years of normal consumer use"— such that Defendant had reason to know the Defect would manifest. (Opp'n Br. at 28–30; AC ¶¶ 74–78.) According to Plaintiffs, the testing—coupled with online customer reviews, warranty claims, repair records, and post-release reliability data—are sufficient to find Defendant possessed knowledge of the Defect and had a duty to disclose it. (Opp'n Br. at 30–31; AC ¶¶ 79–80.)

Defendant argues that Plaintiffs cannot sustain their fraud by omission claims on a nationwide basis given the variability among the laws of Plaintiffs' home states. (Mov. Br. at 31.) Notwithstanding, Defendant addresses the elements common across all states' laws and asks that this Court dismiss Plaintiffs' fraud by omission claims because Plaintiffs have failed to

---

warranty running directly to him. . . . The absence of an allegation of privity between plaintiff and the warrantor in the sale of the warranted item is not fatal to the claim.").

[9] Plaintiffs' fraud by omission and violation of several state consumer protection statutes claims sound in fraud. The parties largely address these claims together, while noting some differences among state laws. This Court does the same while drawing relevant distinctions where necessary. *See Ludwig v. FAC US LCC*, 795 F. Supp. 3d 525, 551–52 (D.N.J. 2025) (assuming differences in state laws were irrelevant where the parties did not distinguish between the common law and consumer protection statutes for the plaintiffs' fraud claims); *McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470, 2023 WL 614 0641, at *7 n.11 (D.N.J. Sept. 20, 2023) (acknowledging the plaintiffs' fraudulent omission and violation of state consumer protection statutes' claims both sounded in fraud and endeavoring to draw distinctions where necessary).

demonstrate that Samsung had a duty to disclose, identify any material misrepresentation, or show that they relied on any misrepresentation from Samsung. (Mov. Br. at 31–32.)

Defendant contends Plaintiffs' reliance on consumer reviews and complaints is misplaced as some of the reviews concern refrigerator models not purchased by any of the named Plaintiffs, post-date Plaintiff Whicker's date of purchase, or are too vague to sufficiently allege Defendant had knowledge of the alleged Defect with the specificity required by Rule 9(b). (Mov. Br. at 33–36, 39.) As to pre-sale testing, Defendant notes Plaintiffs' "generic allegations . . . do not establish a date by which Samsung would have become aware" of the Defect, let alone that this occurred prior to Plaintiffs' respective purchases. (Mov. Br. at 37–38.) Defendants similarly argue that "Plaintiffs' allegations regarding pre-release reviews and post-release repair and warranty data are insufficient for all the same reasons as the allegations regarding testing and consumer complaints." (Mov. Br. at 38.)

Generally, common-law omissions and representations fraud claims require: "(1) omissions of misrepresentations of fact; (2) in the case of omissions, a duty to disclose; (3) intent to mislead; (4) materiality; (5) justifiable reliance; and (6) damages proximately caused by that reliance."[10] *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013) (collecting

[10] As required by New Jersey law, a plaintiff pursuing a common law fraud by omission claim must plead the defendant possessed knowledge under Arizona, California, North Carolina, and Oregon law. *Tavilla v. Cephalon, Inc.*, 870 F. Supp. 2d 759, 774 (D. Ariz. 2012) (listing the elements of common law fraud under Arizona law as: "(1) a representation; (2) its falsity; (3) its materiality; (4) speaker's knowledge of its falsity or ignorance of its truth; (5) intent that it should be acted upon; (6) hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon, and (9) his consequent and proximate injury." (quoting *Fridenmaker v. Valley Nat'l Bank of Ariz.*, 534 P.2d 1064, 1068 (Ariz. 1975)); *Webb v. Clark*, 546 P.2d 1078, 1080 (Or. 1976) (same); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) ("The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (quoting *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997)); *Friedland v. Gales*, 509 S.E.2d 793, 807 (N.C. Ct. App. 1998) ("To assert a claim for fraudulent concealment, there must be a showing that the opposing party knew a material fact, and failed to fully disclose that fact in violation of a pre-existing duty to disclose.").

cases). Federal Rule of Civil Procedure 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake," but provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, "'generally' is a relative term" to be compared to the particularity requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* at 686–87. "Under this approach, a plaintiff adequately pleads omission-based fraud by alleging 'what the omissions were,' who was 'responsible for failing to disclose the information,' the 'context of the omission and the manner in which it misled [the] plaintiff,' and 'what defendant obtained through the fraud.'" *Robinson v. Subaru of Am., Inc.*, No. 24-9334, 2025 WL 3771387, at *8 (D.N.J. Dec. 31, 2025) (alteration in original).

"A claim for fraudulent concealment based on either an affirmative misrepresentation or an omission requires a showing that defendant had actual knowledge of the falsity of a fact, or knowledge of the omitted fact." *Argabright*, 201 F.Supp.3d at 602. Plaintiffs rely on a series of online reviews posted to both Samsung and a third-party retailer's websites to bolster their argument that Samsung had knowledge of the Defect. (AC ¶¶ 79 & 80.) This Court declines to consider the fourteen reviews post-dating 2023, the last year some Plaintiffs purchased

---

Since this Court's conclusion regarding knowledge is dispositive to the issue of whether Plaintiffs plausibly plead fraud by omission, this Court concludes that for purposes of this opinion, any variations in Plaintiffs' respective states' common law pertaining to what is required for fraud by omission claims are a non-issue. *See Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997) ("Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the choice-of-law question."); *cf. Avram v. Samsung Elecs. Am., Inc.*, No. 11-6973, 2013 WL 3654090, at *12 (D.N.J. July 11, 2013) (finding a false conflict where New Jersey law did not require privity, and the plaintiffs' home states did, but both plaintiffs were in privity with the defendant, such that the lack of privity was a non-issue).

refrigerators. *See McMahon v. Volkswagen Aktiengesellschaft*, No. 22-1537, 2023 WL 4045156, at *12 (D.N.J. June 16, 2023) (declining to give post-sale complaints weight "as they logically could not provide pre-sale knowledge"); *cf. Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 WL 1366446, at *20 (D.N.J. Apr. 1, 2024) (declining to infer pre-sale knowledge from consumer complaints, particularly because the complaint did not indicate when these complaints were published, and because five consumer complaints were not an unusually high number so as to put the defendant on notice). The Amended Complaint does not identify the relevant model for five of the remaining nine reviews, so this Court similarly declines to consider those posts. *See Williams v. Samsung Elecs. Am., Inc.*, No. 23-989, 2026 WL 509474, at *13 (D.N.J. Feb. 24, 2026) (declining to consider posts made to Samsung's community forums that concerned laptops not at issue in the litigation because the plaintiffs could not explain "how the complaints they [cited] could have put Samsung on notice of an Overheating Defect affecting all Galaxy Book models at issue *here*.") Four complaints made in 2021 for Samsung French Door refrigerators Model Number RS27T5200SR remain. In isolation, these four complaints do not sufficiently establish Defendant had knowledge of the Defect. However, this Court turns to consider whether the four 2021 complaints—coupled with Plaintiffs' allegations concerning pre-sale testing—sufficiently plead that Defendant had knowledge of the Defect.

*Ponzio v. Mercedes-Benz USA, LLC* is instructive on the issue before this Court. 447 F. Supp. 3d 194 (D.N.J. 2020). In *Ponzio*, nine plaintiffs brought a putative, nation-wide class action against defendants Daimler AG and its wholly owned subsidiary Mercedes-Benz USA, LLC alleging that a number of Mercedes' vehicles featuring "Mars Red" paint had a defect causing "the Vehicles' exterior clearcoat to bubble, peel, and flake off, ultimately leading to rusting and corrosion." 447 F. Supp. 3d at 209. The plaintiffs claimed that the defendants not only knew

about the defect, but also knowingly and intentionally concealed it. *Id.* at 226. To support their fraudulent concealment claims, the plaintiffs alleged pre-release design and testing conducted on the paint supported finding that the defendants had knowledge of the defect. *Id.* at 227. The plaintiffs "detail[ed] a number of test procedures" developed by the American Society for Testing and Materials and the Society of Automotive Engineers. *Id.* The plaintiffs also alleged how through the defendants' membership of Production Part Approval Process ("PPAP"), defendants "would have been required" to test the paint, its application, and whether it adhered to a vehicle's surface, among other things; the plaintiffs explained "what PPAP is, its purpose, and requirements." *Id.* Lastly, the plaintiffs alleged defendant Mercedes developed "Mercedes SAE Standards & Testing" and how these specific standards and testing included tests specific to the performance of the paint used on its vehicles, such as "a test relating to the 'Coating/Painting for parts Subject to Moderate Exposure to Corrosion Stress.'" *Id.* at 227–28.

The allegations concerning pre-sale testing in this matter are vastly different than those in *Ponzio*. The allegations concerning pre-sale testing in Plaintiffs' Amended Complaint generally describe the types of tests Defendant employs as part of its "multi-stage product development process," such as Engineering Validation, Design Validation, and Production Validation Testing. (AC ¶ 22.) Plaintiffs also generally allege that individual components are subjected to mechanical stress, torsion, vibration, thermal cycling, pressure, and reliability-growth testing. (*Id.* ¶ 23.) Unlike in *Ponzio*, the Amended Complaint here does not include allegations as to what these tests consist of, their purpose, or respective requirements, let alone how they could have revealed the Defect. *See Snowdy*, 2024 WL 1366446, at *20 ("Plaintiffs cannot establish pre-sale knowledge based on collaboration and testing where they have alleged no facts to support the inference that the collaboration and testing necessarily revealed the defect."); *Sauer v. Subaru of Am., Inc.*, No.

18-14933, 2020 WL 1527779, at *9 (D.N.J. Mar. 31, 2020) ("Alleging that tests, including testing in response to consumer complaints, were done, without more, is merely conclusory."). Even considering the pre-sale testing allegations in conjunction with the four 2021 complaints, this Court concludes Plaintiffs have not adequately alleged facts demonstrating Defendant knew of the Defect. *See Sauer*, 2020 WL 1527779, at *9 (a plaintiff's allegations about "various" online complaints, without "allegations regarding the methods by which [said] complaints were recorded and transmitted to management, or otherwise reviewed or received," did not sufficiently plead defendant Subaru's knowledge of the alleged defects). Count III is hereby dismissed.

**ii. State Consumer Protection Statues (Counts V through IX)**

Plaintiffs bring claims for violations of several state consumer protection statutes. Just as with their fraud by omission claims, they argue that the consumer complaints and pre-sale testing conducted by Samsung sufficiently allege knowledge so as to create a duty to disclose under each state's relevant consumer protection statute. (Opp'n Br. at 34–35.) Defendant contends these allegations are insufficient. (Mov. Br. at 41–45.)

The relevant statutes for Arizona, California, and North Carolina impose a duty to disclose where the defendant had knowledge of material facts—namely, a defect.[11] The Oregon UTPA

---

[11] *State ex el. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1281 (Ariz. 2012) ("[T]he CFA itself imposes the actionable duty[ ] to refrain from a 'deceptive act or practice' or an 'omission of any material fact with intent that others rely' thereon." (quoting Ariz. Rev. Stat. Ann. § 44-1522(A)); *Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 864–65 (N.D. Cal. 2018) (analyzing the plaintiffs' fraud and consumer protection claims alleging that the defendant unlawfully failed to disclose an excessive oil consumption defect in certain vehicles brought pursuant to California's UCL, CLRA, and common law; recognizing that a duty to disclose arises "when the defendant had exclusive knowledge of material facts not known to the plaintiff," among other forms; and stating that "[t]o be liable for a failure to disclose, a defendant must have pre-sale knowledge of the defect"); *City of High Point, N.C. v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 635–36 (M.D.N.C. 2020) (explaining that "[f]or a concealment or omission to be actionable under the [North Carolina] UDTPA, the defendant must have had a duty to disclose that which was concealed or omitted," and that this duty arises even where no fiduciary relationship exists when either (a) "a party has taken affirmative steps to conceal material facts from the other" or (b) "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to

does not impose a duty to disclose outright, but "defines as unlawful [the] 'fail[ure] to disclose any *known* material defect or material nonconformity' '[c]oncurrent with tender or delivery of any . . . goods.'" *McIntyre v. Am. Honda Motor Co., Inc.*, 739 F. Supp. 3d 776, 801 (C.D. Cal. 2024) (second and third alterations and omission in original) (emphasis added) (quoting Or. Rev. Stat. § 646.608(1)(t)). The knowledge requirement permeates each of the consumer statutes invoked in the Amended Complaint. It follows that Plaintiffs' consumer protection violation claims rise and fall with their fraud by omission claims. Thus, Plaintiffs' failure to plead factual allegations demonstrating Samsung had knowledge of the Defect—as discussed above—is detrimental to their state consumer protection violation claims, as Plaintiffs do not establish Defendant had a duty to disclose. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 576 (N.D. Cal. 2019) (concluding defendant Apple Inc. did not have a duty to disclose any information related to the alleged defect where the plaintiffs' did not adequately allege Apple had exclusive knowledge of the defect and dismissing plaintiffs' consumer protection violations claims under California, North Carolina, Arizona, and Oregon's respective statutes); *cf. Martell v. General Motors LLC*, 537 F. Supp. 3d 1192, 1199 (D. Or. 2021) (finding the plaintiff adequately pleaded a violation of the Oregon UTPA where the UTPA did not impose additional requirements and the court had determined the plaintiff adequately pleaded "active steps to conceal, [defendant's] knowledge, and reliance" in its analysis of the plaintiff's common law fraudulent concealment claim). Counts V through IX are dismissed.

**D. Unjust Enrichment (Count IV)**

Plaintiffs seek restitution for their unjust enrichment claims, contending that they and their fellow class members "conferred substantial benefits on Defendant by purchasing defective

---

discover through reasonable diligence" (quoting *Hutton v. Hydra-Tech, Inc.*, No. 14-888, 2018 WL 1363842 (M.D.N.C. Mar. 15, 2018)).

Refrigerators at a premium without receiving a product that conformed to Defendant's representations and was free from defects that Defendant concealed and omitted." (AC ¶ 155.) Defendant argues that Plaintiffs' failure to plead that they lack an adequate remedy at law is detrimental to their unjust enrichment claims. (Mov. Br. at 47.)

Generally, to state a claim for unjust enrichment "a plaintiff must allege (1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004). Arizona, California, North Carolina, and Oregon require that a plaintiff plead the absence of an adequate remedy at law if asserting a claim for unjust enrichment. *Mousa v. Saba*, 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009) ("To recover on a claim for unjust enrichment, a claimant must show (1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment and (5) the absence of any remedy at law."); *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 596–97 (Cal. Ct. App. 2011) (finding unjust enrichment claim premised on fraud unnecessary pursuant to the general principle of equity that "equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate" since plaintiffs' remedies at law under the CLRA, UCL, and common law fraud were adequate); *Embree Constr. Grp. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992) ("[E]quity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." (alteration in original) (quoting *Jefferson Standard Life Ins. Co. v. Guilford Cnty.*, 34 S.E.2d 430, 434 (N.C. 1945)); *Alsea Veneer, Inc. v. State*, 862 P.2d 95, 100 (Or. 1993) ("Equitable relief does not lie if there is an adequate remedy at law."). Count IV is dismissed because Plaintiffs have not pleaded that they lack an adequate remedy at law.

**E. Class Allegations**

Defendant asks this Court to strike Plaintiffs' nationwide class allegations regarding the common law claims. (Mov. Br. at 49–50.) Plaintiffs oppose this request and argue it is premature since the class has not been certified. (Opp'n Br. at 43–44.)

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[N]umerous cases in this District have emphatically denied requests to strike class allegations at the motion to dismiss stage as procedurally premature." *Feldman v. Mercedes-Benz USA, LLC*, No. 11-984, 2012 WL 6596830, at *13 (D.N.J. Dec. 18, 2012) (collecting cases). This is, in part, because the Rule 23 class certification process calls for discovery, briefing, and "rigorous analysis." *Landsman & Funk OC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244–45 (E.D. Pa. 2012).

At this juncture, Defendant's request is procedurally premature. *See Est. of Cotton v. Senior Planning Servs.*, No. 19-8921, 2020 WL 7022740, at *21 (D.N.J. Nov. 30, 2020) (dismissing motion to strike class allegations as premature where the plaintiffs were given leave to amend their complaint); *Semeran v. Blackberry Corp.*, No. 15-750, 2016 WL 3647966, at *6 (D.N.J. July 6, 2016) ("Although the [c]ourt possesses the discretion to strike class allegations at the pleading stage, it is uncommon except for limited situations (such as the clear lack of standing concerning the Multi-State Class in this case)."). The request is denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion is **GRANTED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
United States Magistrate Judge